UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SUSAN MARY DONOHUE,

                              Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social Security,

                              Defendant.
_____

<u>DECISION AND ORDER</u>

18-CV-1270L

      Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

      On January 8, 2015, plaintiff, then forty-six years old, filed an application for a period of disability and disability insurance benefits, alleging an inability to work since May 1, 2014. (Administrative Transcript, Dkt. #5 at 17). Her application was initially denied. Plaintiff requested a hearing, which was held on May 5, 2017 before Administrative Law Judge ("ALJ") Paul Georger. The ALJ issued a decision on September 5, 2017, concluding that plaintiff was not disabled under the Social Security Act. (Dkt. #5 at 17-26). That decision became the final decision of the Commissioner when the Appeals Council denied review on September 28, 2018. (Dkt. #5 at 1-3). Plaintiff now appeals from that decision.

      The plaintiff has moved for remand of the matter for further proceedings (Dkt. #10), and the Commissioner has cross moved (Dkt. #15) for judgment on the pleadings, pursuant to Fed. R.

Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the complaint is dismissed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records, with particular focus on her treatment notes for cervical degenerative disc disease and lumbar degenerative disc disease, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #5 at 20).

The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light work, except that plaintiff can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; can sit, stand and/or walk for six hours in a workday; can occasionally operate hand controls with the right hand; and can occasionally handle, feel and/or finger items with either hand. (Dkt. #5 at 20). When provided with this RFC as a hypothetical at the hearing, vocational expert Jeanne Beachler testified that such an individual could perform the representative positions of companion, gate guard and furniture rental clerk. (Dkt. #5 at 25).

## I. Treating Physician Opinion

Plaintiff's chief argument is that the ALJ erred when he failed to apply the treating physician rule to the opinion of plaintiff's treating primary care physician.

It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). In determining what weight to give a treating physician's opinion, the ALJ must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. §404.1527(d)[1].

Further, the ALJ must articulate his reasons for assigning the weight that he does accord to a treating physician's opinion. *See Shaw*, 221 F.3d at 134. *See also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). An ALJ's failure to apply the treating physician rule factors and give good reasons for declining to grant controlling weight is typically reversible error. "If, however, 'a searching review of the record' assures [the Court] that the substance of the treating physician rule was not traversed,'" and the record otherwise provides "good reasons" for the weight given to the treating physician's opinion, affirmance may be appropriate. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

Plaintiff's treating primary care physician, Dr. Robert J. Erickson, rendered an opinion concerning plaintiff's exertional and nonexertional impairments on April 19, 2017. Dr. Erickson

---

[1] Changes to the Administration's regulations regarding the consideration of opinion evidence eliminate application of the "treating physician rule" for claims filed on or after March 27, 2017. For the purposes of this appeal, however, the prior version of the regulation applies.

3

noted that plaintiff was diagnosed with cervical disc disorder with myelopathy (spinal cord disease), spinal stenosis (narrowing of the spinal canal), and back pain. He stated that her symptoms include [tenderness to palpation] over the cervical spine at C6 and C7, limited range of lateral flexion and rotation to the right, limited forward flexion, muscle weakness, sensory changes and reflex changes. (Dkt. #5 at 368). He opined that plaintiff can walk up to 2 city blocks, sit for up to 30 minutes at a time for a total of 3 hours or less in a workday, and stand/walk for up to 20 minutes at a time for a total of 2 hours or less in a workday. She can lift up to 50 pounds occasionally, and requires at least 3 10-minute rest breaks per day due to pain in her back and neck. Dr. Erickson further opined that plaintiff's back and neck pain will cause her to be absent from work more than four days per month. (Dkt. #5 at 368-70).

The ALJ (who erroneously referred to Dr. Robert Erickson's opinion as that of "Dr. Robertson") afforded the opinion "little" weight," finding it to be "not consistent with the medical evidence of record [because] . . . [d]iagnostic testing showed only mild mid-low back and neck injuries and the claimant reported only mild pain. Dr. [Erickson's] restrictions are inflated and not supported by objective findings or claimant statements." (Dkt. #5 at 24).

The ALJ's assessment of Dr. Erickson's opinion made no obvious application of the treating physician rule, and the primary reason the ALJ provided for rejecting it (inconsistency with the evidence of record) is not immediately followed by any discussion of, or citation to, any of the allegedly contradictory evidence.

Nonetheless, the ALJ's discussion of the weight he assigned Dr. Erickson's opinion did not occur in a vacuum: immediately prior to stating his conclusion concerning the weight he assigned to each opinion of record, the ALJ summarized all of the medical evidence of record in detail, including plaintiff's treatment with Dr. Erickson and other physicians, the results of relevant

4

imaging studies, and plaintiff's self-reports of her symptoms and her activities of daily living. The evidence discussed by the ALJ included: March 5, 2014 treatment notes following a slip-and-fall injury, with objective examination findings of a 25% decreased in range of spinal flexion, extension and bending, but full strength in upper and lower extremities, and a finding of temporary partial disability with recommendations of sedentary work with a position-change option and no repetitive bending, lifting or twisting (Dkt. #5 at 244-46); an April 11, 2014 treatment note reporting that plaintiff's condition was unchanged, with pain rated at 5/10, with a finding of temporary partial disability and recommendations of sedentary work with a position-change option and no repetitive bending, lifting or twisting (Dkt. #5 at 250); a March 20, 2014 evaluation at which plaintiff reported pain at levels of 4/10 in her neck and 5/10 in her back, with examination findings of slightly reduced spinal range of motion, neck strength of 4/5, full strength and muscle tone in all extremities, normal sensation and reflexes, intact coordination, normal gait, and negative straight leg raising tests (Dkt. #5 at 471-75); March 20, 2014 X-rays showing fractional narrowing at C4-5, C5-6, and C6-7 with a complete loss of cervical lordosis (spinal curvature), and lumbar spondylolisthesis (vertebral slippage or displacement) at L5-S1 (*Id.*); May 15, 2014 and July 22, 2014 reports by plaintiff that her pain level was 3/10 and 5/10 (Dkt. #5 at 278, 492); an April 10, 2014 MRI of the spine showing reversal of plaintiff's cervical lordosis and spondylosis (disc degeneration), with mild disc herniation at C4-5, C5-6 and C6-7 levels, and herniated discs at L3-4, L4-5 and L5-S1 with mild spondylolisthesis at L5-S1 (Dkt. #5 at 280-81, 286, 291-92); an August 22, 2014 evaluation in which plaintiff reported pain in the lumbar spine and neck and alleged difficulty with stairs, sitting for long periods, reaching overhead, bending, walking and sleeping, with examination findings including no spinal spasms, full strength, no muscle atrophy, negative straight leg raising test and good balance, and plaintiff released to work with restrictions

of no repetitive bending (Dkt. #5 at 263-66); a March 27, 2015 internal medical examination of plaintiff, then alleging pain of 8/10 in the neck and 5/10 in her lumbar spine, with examination findings of full range of cervical spinal motion, decreased left lateral flexion but full range of motion in other planes, negative straight leg raising test, normal gait and full range of motion in the upper and lower extremities, and physician opinion that plaintiff had mild restrictions to handling and fingering objects with her right hand (Dkt. #5 at 294-96); April and December 2015 medical appointments at which plaintiff estimated her pain between 4/10 and 6/10 (Dkt. #5 at 351, 507-08); the conservative nature of plaintiff's treatment throughout the relevant period (taking Tylenol and briefly using prescription medications and physical therapy, but refusing stronger medications and/or surgery) (Dkt. #5 at 22-23, 405); and plaintiff's self-described activities of daily living, including most activities of personal care, meal preparation, household chores including laundry and cleaning, driving and grocery shopping.   (Dkt. #5 at 24).

In light of the evidence cited by the ALJ immediately prior to his discussion of the weight afforded to the opinions of record (including Dr. Erickson's opinion), his observation that the restrictions opined by Dr. Erickson "are inflated and not supported by objective findings or claimant statements" was not an unsupported mischaracterization, or an improper layperson interpretation of the objective medical evidence.  That evidence, summarized above, included imaging findings showing mild herniated discs in the cervical spine and herniated discs in the lumbar spine, reports of back and neck pain averaging 4/10 or 5/10, with intermittently reduced spinal flexion, but full strength in all extremities, intact reflexes, negative straight leg raising tests (suggesting an absence of major disc herniation), normal gait, and conservative treatment for plaintiff's back and neck pain, primarily consisting of over-the-counter medications.

In brief, while a treating physician's opinion is entitled to controlling weight where it is "well supported by medical findings," the opinion by Dr. Erickson lacks such support. The reasons given by the ALJ for declining to afford it controlling weight – including the lack of clinical objective evidentiary support, and inconsistency with the record – provided a sufficient basis for giving the opinion "little" weight, even though the ALJ recited his discussion of the medical evidence elsewhere in the same section of his opinion. Notwithstanding the ALJ's failure to explicitly apply the treating physician rule factors to Dr. Erickson's opinion, the Court finds that the "substance of the treating physician rule was not traversed," and that the ALJ gave "good reasons" for declining to give the opinion controlling weight. *Halloran*, 362 F.3d at 32.

In summary, I find that the weight given by the ALJ to the medical opinions of record was appropriate, and that the ALJ's decision is supported by substantial evidence, and is not the product of legal error.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence, and was not the product of reversible legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #10) is denied, the Commissioner's cross motion for judgment on the pleadings (Dkt. #15) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
March 25, 2020.